UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
BALWAN SINGH HOODA,

                    Plaintiff,

          -against-                          MEMORANDUM AND DECISION
                                             08-CV-3403 (JS) (WDW)
BROOKHAVEN    NATIONAL     LABORATORY,
a.k.a.,   and/or   d/b/a   BROOKHAVEN
SCIENCE   ASSOCIATES   LLC;   MICHAEL
BEBON,   WILLIAM   HEMPFLING,   WILLIAM
ROBERT   CASEY,   GEORGE   GOODE,   and
MICHAEL HOLLAND,

                    Defendants.
------------------------------------X
Appearances:
For Plaintiff:      Balwan Singh Hooda, pro se
                    2 Christina Lane
                    Middle Island, N.Y. 11953


For the Brookhaven
Defendants:         Devjani Mishra, Esq.
                    Marcia Maria Henry, Esq.
                    Seyfarth Shaw LLP
                    620 Eighth Avenue
                    New York, N.Y. 10018


For Defendant
Michael Holland:    Vincent Lipari, Esq.
                    United States Attorneys Office
                    Eastern District of New York
                    610 Federal Plaza, 5th Floor
                    Central Islip, N.Y. 11722


SEYBERT, District Judge:

          Plaintiff Balwan Singh Hooda, appearing pro se, filed

suit alleging violations of Title VII, 42 U.S.C. §§ 1981, 1983,

1985 and 1986, the First and Fourteenth Amendments to the U.S.

Constitution, and the New York Human Rights Law.  Defendants

Brookhaven Science Associates LLC ("BSA")[1], Michael Bebon, William

Hempfling, William Robert Casey and George Goode (collectively, the

"Brookhaven Defendants") have moved to dismiss certain claims that

Mr. Hooda asserts.    For the following reasons, the Brookhaven

Defendants' motion is GRANTED IN PART AND DENIED IN PART.

     The Brookhaven Defendants have also moved to partially

stay discovery pending the Court's decision on this motion.    That

motion is DENIED AS MOOT.

     For his part, Mr. Hooda has filed a "Cross Motion For

Full Discovery."    That motion is GRANTED IN PART AND DENIED IN

PART.    As per the usual application of the Federal Rules of Civil

Procedure, Mr. Hooda is entitled to normal discovery on the claims

that this decision has not dismissed.

## BACKGROUND

     Brookhaven National Laboratory is a facility owned by the

Department of Energy and managed by Defendant BSA.    BSA employs

more than 2500 people at BNL.    Compl. ¶ 9.

     Mr. Hooda, an American citizen of Indian origin, has

been employed at BNL since May 1, 2000.    Compl. ¶¶ 8-9.    During

---

[1] Although not phrased as a request for judicial notice, the
Brookhaven Defendants have asked the Court to dismiss Defendant
Brookhaven National Laboratory ("BNL") on the grounds that this
defendant is not a legal entity, but a facility owned by the U.S.
Department of Energy.  Brookhaven Def. Br. at 1, n.1.  Thus, the
Brookhaven Defendants contend that BNL cannot be sued.  Id.  Mr.
Hooda's opposition papers do not dispute the Brookhaven
Defendants' contention.  Accordingly, BNL is dismissed as a
defendant.

this entire time, he has worked as an Environmental Radiation Program Manager with the pay classification Project Engineer-I. Compl. ¶¶ 9, 19. Mr. Hooda's performance appraisals have categorized him as a "commendable performer" who "often performs above performance expectations." Compl. ¶ 20. Mr. Hooda is the only certified health physicist with 18 years experience in BNL's Environmental and Waste Management Services Division ("EWMSD"). Compl. ¶ 21. He is a recognized expert in the fields of radiological protection, Department of Energy standards, environmental compliance, occupational radiation safety, and health protection and compliance. Compl. ¶ 23.

In or about March 2007, Mr. Hooda applied to be BNL's "Assistant Lab Director for the Environmental Safety and Health Division." Compl. ¶ 24. On July 26, 2007, Mr. Hooda emailed Mr. Hempfling, BNL's Manager of Personnel, to inquire about his application. Compl. ¶ 25. Mr. Hempfling informed Mr. Hooda that he had been arbitrarily screened out of the selection process because there were too many candidates, and because Mr. Hooda had not run an organization with a $20 million budget nor supervised over 100 people. Compl. ¶¶ 26-27. Mr. Casey, the Chair of the Hiring Committee, also participated in this decision. Compl. ¶ 26. Mr. Hooda informed Mr. Hempfling that: (1) he met all of the position's advertised requirements; (2) he possessed qualifications similar to the last person to hold the position; (3) he was more

qualified than any of the internal candidates for the position; and
(4) there were other candidates who did not meet the $20 million
and 100 people criteria but were not screened out. Compl. ¶¶ 27-
30. Mr. Hempfling responded that BSA did not need to advertise all
of the position's requirements and can "base the selection process
in any way they want to." Compl. ¶ 29. However, after Mr. Hooda
protested, Mr. Hempfling agreed to permit Mr. Hooda to reapply.
Compl. ¶ 30. Mr. Hooda refused to do so, arguing that "unless the
selection process is transparent, unbiased, has detailed selection
criteria and posts consistent job requirements for the position,"
his reapplication would be "futile" because he had no guarantee
that the selection process "is going to be fair this time around."
Compl. ¶ 31.

In response to the difficulty he encountered in applying
for the Assistant Lab Director position, Mr. Hooda sent a letter to
BNL's Advisory Committee, asking that they investigate allegedly
discriminatory hiring practices at BNL. Compl. ¶ 32. In this
letter, Mr. Hooda also asked the Advisory Committee to investigate
other kinds of discrimination, including the alleged hostile work
environment he claims to have experienced. Id.

In October 2007, Mr. Hooda applied for another position,
this time as an ES&H Manager in the National Synchroton Light
Source II project office, a lower-level position than the Assistant
Lab Director position that Mr. Hooda failed to obtain. Compl. ¶

33.  Mr. Hooda received no response to this application, despite sending repeated emails to BSA's human resources personnel.  Compl. ¶¶ 34, 35.  Eventually, Mr. Hooda was informed (it is unclear by whom) that he was not considered for the position because he lacked construction experience, even though construction experience was not an advertised qualification or requirement for the position. Compl. ¶ 36.  On January 25, 2008, Mr. Hooda wrote BSA personnel, noting that he met or exceeded all of the position's posted requirements.  Compl. ¶ 38.  Mr. Hooda believes that the failure to consider him for this position was not only discriminatory, but also in retaliation for his previous discrimination complaints.

Mr. Hooda has other complaints concerning BSA's hiring process and BNL's working environment.  He alleges that decision-makers frequently award promotions to their personal friends, and cites two specific examples of this occurring.  Compl. ¶¶ 43, 44, 46.  He alleges that, although he is his division's only certified health physicist, he is not permitted to participate in a "senior managers" meeting, or join certain workplace committees.  Compl. ¶¶ 45, 52.  He alleges that he is not "given credit and recognition for his work," and that his recommendations "are marginalized . . . to the extent of endangering the public health and safety." Compl. ¶ 47.  He alleges that BSA does not enforce its own workplace policies with respect to minorities' complaints.  Compl. ¶ 50.  He alleges that his superiors have engaged in "intimidation"

by "making statements such as 'where have you been hiding'" to him
in front of his co-workers, even though he had been on official
duty. Compl. ¶ 53. He alleges that BNL management has allocated
certain "radiological" responsibilities to a white person with
lower qualifications than himself. Compl. ¶ 54. And he alleges
that BSA promotes white people who lack a "health physics
certification," while not promoting him or providing him with a
"decent raise" despite his certification.

On February 25, 2008, Mr. Hooda filed a Charge of
Discrimination with the EEOC. In this Charge, Mr. Hooda checked
the boxes indicating that he was complaining of discrimination
based on "race," "national origin" and "retaliation." He did not
check the "color" discrimination box. Describing his complaints,
Mr. Hooda alleged that:

1.  Selection process/criteria is arbitrary
    and biased.

2.  Promotion/management selection are
    preemptive and geared towards whites.

3.  Allocation of Resources/projects are
    selectively biased, and minorities are
    excluded.

4.  Inconsistent post advertising and
    selection criteria is opaque.

For specific examples, Mr. Hooda listed the difficulties
he encountered in attempting to apply for the Assistant Lab
Director and ES&H Manager positions.

On May 28, 2008, the EEOC issued Mr. Hooda a Right to Sue

letter.  This suit followed.

DISCUSSION

I.    <u>Standards of Review</u>

In deciding motions to dismiss brought under Fed. R. Civ. P. 12(b)(6)[2], the Court applies a "plausibility standard," which is guided by "[t]wo working principles," <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).  First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris</u>, 572 F.3d at 72 (quoting <u>Ashcroft</u>).  Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss, and determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>  That being said, courts "remain obligated to construe a pro se complaint liberally." <u>Id.</u>

---

[2] The Brookhaven Defendants moved under both Rule 12(b)(6) [failure to state a claim] and Rule 12(b)(1) [lack of subject matter jurisdiction].  After assessing the Brookhaven Defendants' motion, the Court concludes that most of it is properly brought under Rule 12(b)(6), not Rule 12(b)(1).  The exception is the Brookhaven Defendants' challenge to Mr. Hooda's New York Human Rights Law claim, which is jurisdictional in nature.  The Court considers the Brookhaven Defendants' attempt to dismiss that claim under Rule 12(b)(1).

7

II.  Mr. Hooda's Title VII Claims

        The Brookhaven Defendants raise several objections to Mr.
Hooda's Title VII claims.  Specifically, the Brookhaven Defendants
claim: (A) Mr. Hooda's claims accruing before January 24, 2008 are
time-barred; (B) Mr. Hooda's discrimination claims based upon
"color," "pattern and practice" and "hostile work environment" are
barred because Mr. Hooda failed to plead them in his original EEOC
Charge; and (C) Defendants Bebon, Hempfling, Casey and Goode cannot
be held personally liable under Title VII.  The Court addresses
each of these arguments in turn.

        A.    Timeliness

        The Brookhaven Defendants argue that Mr. Hooda's claims
accruing before January 24, 2008 are time-barred because Mr. Hooda
waited too long before filing his EEOC charge.  In particular, the
Brookhaven Defendants contend that Mr. Hooda cannot bring suit
regarding his failure to obtain the Assistant Lab Director position
in July 2007.  Brookhaven Def. Br. at 4.

        Under Title VII, a discrimination charge must "be filed
within one hundred and eighty days after the alleged unlawful
employment practice occurred . . .  except that in a case of an
unlawful employment practice with respect to which the person
aggrieved has initially instituted proceedings with a State or
local agency with authority to grant or seek relief from such
practice . . . such charge shall be filed by or on behalf of the

person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In New York, the State Division of Human Rights has the "authority" to grant relief from discrimination. See, generally, Harris v. N.Y.C., 186 F.3d 243, 247 n.2 (2d Cir. 1999). Thus, in ordinary cases, New York discrimination plaintiffs have 300 days after a discriminatory act to file a charge. Id.

Unfortunately for Mr. Hooda, this is not an ordinary case. Mr. Hooda worked at BNL. And BNL is a "federal enclave" – an area in which New York expressly ceded legislative jurisdiction to the Federal Government. See Brookhaven Science Associates, LLC v. Donaldson, 04-CV-4013, 2007 WL 2319141, *1, *5 (S.D.N.Y. 2007). U.S. CONST. ART. I, § 8, cl. 17. Applying the federal enclave doctrine, three Second Circuit district judges have held that the New York Human Rights Law does not govern conduct at BNL. Id. at *7 ("state anti-discrimination statutes are not applicable on federal enclaves") (Preska, J.); Sundaram v. Brookhaven Nat. Laboratories, 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) (N.Y. Human Rights Law has no force at BNL) (Gershon, J.); Schiappa, Sr. v. Brookhaven Science Associates, LLC, 403 F. Supp. 2d 230, 238 (E.D.N.Y. 2005) ("the NYSHRL does not apply on this federal enclave and is not enforceable as to BSA operations at the BNL") (Spatt, J.). This Court agrees. As Judge Spatt recognized in Schiappa, in ceding the land that became BNL to the Federal Government, New York

retained concurrent jurisdiction only with respect to "service of process." <u>Schiappa</u>, 403 F.Supp.2d at 237. But New York did not retain "authority for the state to exercise legislative or police powers" within BNL. <u>Id.</u> Thus, New York laws passed after the state ceded BNL to the federal government, such as the New York Human Rights Law, have no force at BNL. <u>Id.</u>

BNL's status as a federal enclave not subject to the New York Human Rights Law does not, however, definitively determine whether Mr. Hooda is entitled to a 180 or 300 day period to bring an EEOC Charge. True, there is no "State or local agency with authority to grant" relief from discrimination at BNL. 42 U.S.C. § 2000e-5(e)(1). But, in previous court filings, BSA itself has apparently argued that the 300-day period nevertheless applies, and – as a result – previously decisions have uniformly so held. <u>See</u> <u>Sundaram</u>, 424 F. Supp. 2d at 559 (noting that "the parties . . . assumed that the 300-day limitation period applies"); <u>Tardd v. Brookhaven Nat. Laboratory</u>, 407 F. Supp. 2d 404, 416 (E.D.N.Y. 2006) (agreeing, in part, with BSA's argument that Title VII's 300-day period for filing a charge barred plaintiffs' claims); <u>Schiappa</u>, 403 F. Supp. 2d at 234; <u>Benjamin, v. Brookhaven Science Associates, LLC</u>, 387 F. Supp. 2d 146, 152 (E.D.N.Y. 2005) ("Defendant argues that the Title VII hostile work environment and retaliation claims that pre-date December 21, 2002, i.e. 300 days prior to the date Benjamin filed his charge with the EEOC, should

be dismissed as time-barred. The Court agrees."). In addition, the EEOC itself, in its December 21, 2007 letter to Mr. Hooda, informed him that he had "300 days from your last date of harm to file a Charge." The Court is mindful of the fact that Title VII's time period for filing a claim "is not jurisdictional and, similar to a statute of limitations, is subject to the defenses of waiver, tolling, and equitable estoppel." <u>Tardd</u>, 407 F. Supp. 2d at 416. Here, although not briefed by the parties, Mr. Hooda has a strong argument that Defendant BSA is collaterally estopped from arguing that the 180 day period applies. And, even if collateral estoppel does not apply, the fact that the EEOC itself informed Mr. Hooda that he had 300 days to file strongly weighs towards a finding of equitable estoppel. Thus, at least for purposes of this motion, the Court declines to find as a matter of law that the 180-day period applies to Mr. Hooda. The parties are welcome to brief this issue in greater detail on summary judgment.

B.    <u>"Color," "Pattern and Practice," and "Hostile Work Environment" Claims</u>

The Brookhaven Defendants also argue that Mr. Hooda's Title VII claims for discrimination based on "color," "pattern and practice," and "hostile work environment," should be dismissed, because Mr. Hooda allegedly failed to include these claims in his EEOC Charge. With respect to "color" discrimination, the Brookhaven Defendants are unquestionably correct. Mr. Hooda did not check the box indicating that he was complaining about "color"

11

discrimination, and nothing in his Charge suggested any intent to set forth a "color" discrimination claim separate from his claims for "race" and "national origin" discrimination. Thus, because Mr. Hooda failed to exhaust his administrative remedies with respect to his "color" discrimination claims, those claims must be dismissed.

The Brookhaven Defendants' claims concerning Mr. Hooda's "pattern and practice" allegations are an equally easy call – this time in Mr. Hooda's favor. The EEOC Charge that Mr. Hooda filled out contained no box specifically marked "pattern and practice" discrimination. But, in the Charge, Mr. Hooda raised allegations that clearly indicated his intent to assert such a claim. Indeed, each of the four general complaints that Mr. Hooda mentioned in the Charge concerned an alleged BSA pattern or practice of discrimination – such as "arbitrary and biased" "Selection process/criteria" and how "Allocation of Resources/projects are selectively biased, and minorities are excluded" – rather than discriminatory acts specifically directed towards him. See supra at 6. Such allegations more than suffice to exhaust Mr. Hooda's administrative remedies with respect to a pattern and practice claim against BSA. See, generally, Schmitt v. Gen. Elec. Co., 06-CV-0726, 2007 WL 1245312, *6 (D. Conn. 2007) ("loose pleading is permitted before the EEOC, and at this stage in the proceedings the Court reads the Complaint and the moving papers in the light most favorable to the Plaintiff") (citations omitted).

Whether Mr. Hooda properly asserted a "hostile work environment" claim in his EEOC Charge is a somewhat tougher call. "To present a hostile work environment claim to the EEOC, a plaintiff must have alleged facts sufficient to suggest 'a pervasive, abusive environment upon which a rational trier of fact could find that he was subjected to a hostile work environment due to his [membership in a protected class].'" <u>Wright v. N.Y.C. Off-Track Betting Corp.</u>, 05-CV-9790, 2008 WL 762196, *3 (S.D.N.Y. 2008); <u>Bazile v. N.Y.C.</u>, 215 F. Supp. 2d 354, 361 (S.D.N.Y. 2002). Here, Mr. Hooda's EEOC Charge did allege discrimination in the "Allocation of Resources/projects." And such allegations do at least somewhat relate to minorities' work environment at BNL. But they do not suffice to allege that minorities face a "pervasive, abusive environment." <u>Id.</u> Rather, they resemble the kind of job-related complaints that, while potentially suggesting discrimination, do not sufficiently allege the "hostile" part of a hostile work environment claim. <u>See</u>, <u>e.g.</u>, <u>Wright</u>, 2008 WL 762196, *3 (allegations in EEOC Charge regarding being relegated to performing menial tasks and receiving less training than other employees did not exhaust hostile work environment claim); <u>Fleming v. Verizon New York, Inc.</u>, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (EEOC Charge allegations that employer treated men and women differently in certain employment aspects did not exhaust hostile work environment claim). In particular, Mr. Hooda's EEOC Charge

contains little or no information with respect to the factors that courts have traditionally examined in assessing whether conduct is sufficiently hostile or abusive to support a Title VII claim – such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." <u>Calhoun v. Mastec, Inc.</u>, 03-CV-386S, 2006 WL 2806452, *8 (W.D.N.Y. 2006). Furthermore, Mr. Hooda's EEOC Charge differs significantly "in 'time and nature'" from his hostile work environment claims, and thus is "not reasonably related" to them. <u>Field v. Tonawanda City School Dist.</u>, 604 F. Supp. 2d 544, 563-64 (W.D.N.Y. 2009). It follows then that Mr. Hooda failed to exhaust his administrative remedies with respect to his hostile work environment claims. Consequently, those claims must be dismissed.

      C.   <u>Personal Liability Under Title VII</u>

      The Brookhaven Defendants also argue that the Title VII claims against Defendants Bebon, Hempfling, Casey and Goode must be dismissed, because Title VII does not impose personal liability. The Brookhaven Defendants are correct. <u>See</u>, <u>e.g.</u>, <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 221 (2d Cir. 2004). Thus, these claims are dismissed. For the same reason, the Court <u>sua sponte</u> dismisses the Title VII claims against Defendant Holland.

III. Mr. Hooda's § 1981 Claims

The Brookhaven Defendants also seek partial dismissal of Mr. Hooda's § 1981 claims. Specifically, the Brookhaven Defendants argue that: (A) the Complaint fails to plead individual liability with respect to Defendants Bebon, Goode, Hempfling and Casey; and (B) § 1981 does not protect against national origin discrimination.

A. Individual Liability under § 1981

The burden for pleading individual liability under § 1981 is not high. A plaintiff need only "demonstrate some affirmative link to causally connect the actor with the discriminatory action." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004). Mr. Hooda has satisfied this modest standard with respect to Messrs. Hempfling and Casey, but not with respect to Mesrrs. Bebon and Goode.

With respect to Messrs. Casey and Hempfling, Mr. Hooda alleges that they "arbitrarily and capriciously" decided to screen out his Assistant Lab Director application, "without any selection criteria." Compl. ¶ 26. In addition, Mr. Hooda alleges that Mr. Casey was "the chair or member of [the] selection committee" with respect to the ES&H Manager position he applied for. Compl. ¶¶ 26, 37. Thus, accepting Mr. Hooda's allegations as true, he has "casually connect[ed]" both Mr. Hempfling and Mr. Casey to the challenged employment actions he complains about. Under § 1981,

this is enough to plead personal liability against them.[3]

Conversely, Mr. Hooda pleads nothing to tie Mr. Bebon to any of the alleged discriminatory conduct. Indeed, Mr. Hooda alleges nothing with respect to Mr. Bebon other than that he was "at all times relevant to this complaint the Deputy Director of Operations" at BNL. Compl. ¶ 10. Thus, the § 1981 claims against Mr. Bebon are dismissed.

Mr. Hooda does make some allegations against Mr. Goode. But none of these allegations suffice to plead a § 1981 claim against him. For instance, Mr. Hooda pleads that, when Mr. Goode "wanted to hire for an opening in EWMS Division" he employed a "selection process that was arbitrary, capricious, and biased towards his own friend, John Selva." Compl. ¶ 44. But § 1981 protects only against retaliation or discrimination based upon characteristics such as race or alienage. See, 42 U.S.C. § 1981(a) (guaranteeing "[a]ll persons" the same rights as "enjoyed by white citizens"); Anderson v. Conboy, 156 F.3d 167 (2d Cir. 1998) (alienage discrimination also covered). It does not prohibit people from favoring their friends, however unjust or unfair that may be. Mr. Hooda also alleges that Mr. Goode discriminated against him by failing to consider his recommendations on improving

_____

[3] Indeed, given how clearly the Complaint connects Mr. Hempfling, in particular, to the alleged discrimination, the Court was not impressed by the Brookhaven Defendants' cursory efforts to have the § 1981 claims against him dismissed.

performance at BSA. Compl. ¶ 51. But, because Mr. Hooda does not connect this failure to any adverse employment action, the fact that Mr. Goode ignored Mr. Hooda's recommendations does not constitute actionable discrimination. Likewise, the allegation that Mr. Hooda complained to Mr. Goode about "discrimination in the 360-degree review process" does not suffice to hold Mr. Goode personally liable. Compl. ¶ 53. Mr. Hooda does not plead any facts suggesting that Mr. Goode personally discriminated against him in this "review process," or had any authority or ability to curtail the discrimination and harassment that Mr. Hooda allegedly experienced from other managers. <u>Id.</u> Consequently, the § 1981 claims against Mr. Goode are also dismissed.

The § 1981 claims against Mr. Holland are dismissed <u>sua sponte</u>. Mr. Hooda pleads nothing to tie Mr. Holland to the alleged discriminatory conduct. Indeed, Mr. Hooda pleads nothing about Mr. Holland at all except for his job title, employer and basic responsibilities. Compl. ¶ 14.

B.    <u>National Origin Discrimination Under § 1981</u>

The Brookhaven Defendants argue that Mr. Hooda's § 1981 claim for national origin discrimination must be dismissed because § 1981 does not protect against this kind of discrimination. The Brookhaven Defendants are correct. <u>Anderson v. Conboy</u>, 156 F.3d 167, 170 (2d Cir. 1998) ("It is also settled that Section 1981 does not prohibit discrimination on the basis of gender or religion,

national origin, or age") (citations omitted). Therefore, Mr. Hooda's § 1981 national origin discrimination claim is dismissed.

That being said, although § 1981 does not protect against national origin discrimination, it does preclude discrimination based upon "ancestry or ethnic characteristics." <u>Lopez v. S.B. Thomas, Inc.</u>, 831 F.2d 1184, 1188 (2d Cir. 1987) (citations and quotations omitted). To the extent that Mr. Hooda alleges discrimination based upon his Indian ancestry or ethnicity, rather than his Indian national origin, the Court grants Mr. Hooda leave to replead his § 1981 claim.

IV. <u>Mr. Hooda's § 1983 Claims must be Dismissed</u>

Mr. Hooda also alleges discrimination in violation of 42 U.S.C. § 1983. The Brookhaven Defendants argue that these claims must be dismissed because all of the Defendants are private parties, there are no allegations that any of them acted under the color of state law, and the individual Defendants could not aid and abet BSA's non-violations. The Brookhaven Defendants are correct. <u>See</u> <u>Nicholas v. Goord</u>, 430 F.3d 652, 656 n. 7 (2d Cir. 2005) (private parties liable under § 1983 only if they act "under color of state law"); <u>see</u> <u>also</u> <u>Schiappa</u>, 403 F. Supp. 2d. at 236 (allegations similar to Mr. Hooda's, concerning BSA's relationship to the State University of New York at Stony Brook, were insufficient to hold BSA liable as a state actor under § 1983). The § 1983 claims are dismissed.

V.   Mr. Hooda's §§ 1985, 1986 Claims must be Dismissed

        The Brookhaven Defendants also argue that Mr. Hooda's
conspiracy claims brought under §§ 1985, 1986 must be dismissed
because Mr. Hooda fails to allege a conspiracy, and, in any event,
his conspiracy claims are barred by the intra-corporate conspiracy
doctrine.  Again, the Brookhaven Defendants are correct.  Based on
the Complaint's allegations, the Brookhaven Defendants were all
part of the same organization.  Compl. ¶¶ 9-13.  Thus, they could
not conspire with each other.  See Linder v. N.Y.C., 263 F. Supp.
2d 585, 591 (E.D.N.Y. 2003).   And, although the Brookhaven
Defendants could theoretically conspire with Defendant Mr. Holland
(allegedly a Government agency official), the Complaint contains no
factual allegations of such a conspiracy.  Indeed, Mr. Hooda pleads
nothing at all with respect to Mr. Holland except for allegations
concerning his position and authority "for oversight of the
contractors."  Compl. ¶ 14.   Thus, the §§ 1985, 1986 claims are
dismissed.

VI.  Mr. Hooda's New York Human Rights Law Claims must be Dismissed

        As discussed above, Mr. Hooda was employed at BNL, a
federal enclave not subject to New York's Human Rights Law.   See
supra at 9-10.  Thus, the Brookhaven Defendants are correct that
Mr. Hooda's New York Human Rights Law claims must be dismissed.

        That being said, Mr. Hooda has submitted evidence
indicating that BSA held itself out as adhering to New York's anti-

discrimination laws. Among other things, BSA allegedly posted
signs describing the protections that the New York Human Rights Law
offers employees. <u>See</u> Hooda Aff. Exs. A-14, A-15. It is possible
that, in so doing, BSA may have subjected itself to liability for
violating the New York Human Rights Law under a contractual or
quasi-contractual theory, insofar as businesses can voluntarily
agree to afford their employees more generous employment
protections than the law mandates. But any such liability would
flow from contract or quasi-contract, not the New York Human Rights
Law itself. Here, Mr. Hooda does not plead any contractual or
quasi-contractual claims. Nor was Mr. Hooda's evidence concerning
BSA's implicit representations about the New York Human Rights Law
attached to his Complaint or incorporated by reference within it.
Thus, BSA's potential liability for New York Human Rights Law
violations under a contractual or quasi-contractual theory is an
enigma that must be left for another day, or another case.

VII. <u>Mr. Hooda's Constitutional Claims must be Dismissed</u>

Finally, the Brookhaven Defendants seek to dismiss Mr.
Hooda's Constitutional claims, brought under the First and
Fourteenth Amendments, arguing that Mr. Hooda has failed to plead
any facts supporting these claims. The Court agrees. The
Fourteenth Amendment constrains only state conduct, not the "acts
of private persons or entities," such as the Brookhaven Defendants.
<u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 837, 102 S. Ct. 2764, 2769, 73

L. Ed. 2d 418 (1982).   And nothing in Mr. Hooda's Complaint remotely resembles a violation of the First Amendment. Accordingly, Mr. Hooda's Constitutional claims are dismissed.

<u>CONCLUSION</u>

The Brookhaven Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.  All claims brought against Brookhaven National Laboratory are dismissed in their entirety.  Counts I, II and V are dismissed as to Defendants Bebon, Hempfling, Casey, Goode and Holland, and insofar as they assert claims for "color" discrimination and hostile work environment.   Count III is dismissed against Defendants Bebon, Goode and Holland, and insofar as it alleges national origin discrimination and violations of 42 U.S.C. § 1983.  Count IV and the two separate counts both pled as Count VI are dismissed in their entirety.

The Brookhaven Defendants' motion to stay discovery pending a decision on their motion to dismiss is DENIED AS MOOT.

Mr. Hooda's cross motion for full discovery is GRANTED IN PART AND DENIED IN PART.  Mr. Hooda is entitled to normal discovery with respect to his non-dismissed claims.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          September 15, 2009