```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BALWAN SINGH HOODA,

                   Plaintiff,

         -against-                          MEMORANDUM & ORDER
                                            08-CV-3403(JS)(WDW)
BROOKHAVEN SCIENCE ASSOCIATES, LLC,
WILLIAM HEMPFLING, WILLIAM ROBERT
CASEY, MICHAEL BEBON, CAROL PARNELL,
GEORGE GOODE, and ROBERT LEE,

                   Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:     Scott M. Mishkin, Esq.
                   Scott Michael Mishkin, P.C.
                   One Suffolk Square, Suite 520
                   Islandia, NY 11749

For Defendants:    Tara Simone Smith, Esq.
                   Caitlin Alexis Senff, Esq.
                   Christie Del Rey-Cone, Esq.
                   Seyfarth Shaw LLP
                   1270 Avenue of the Americas, Suite 2500
                   New York, NY 10020
```

SEYBERT, District Judge:

Plaintiff Balwan Singh Hooda ("Plaintiff") asserts race and national origin discrimination and retaliation claims against Defendants Brookhaven Science Associates, LLC ("Brookhaven"), William Hempfling, William Robert Casey, Michael Bebon, Carol Parnell, George Goode and Robert Lee ("Defendants"). Pending here is Plaintiff's motion to file a Second Consolidated Amended Complaint, which would withdraw certain claims against several individual defendants and add age

discrimination and retaliation claims against Brookhaven under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq.  Also pending is the Defendants' motion to dismiss the Consolidated Amended Complaint (Docket Entry 67). For the reasons that follow, Plaintiff's motion is GRANTED.  In light of this decision, Defendants' motion to dismiss is DENIED AS MOOT.

## BACKGROUND

The Court first traces this ligation's unusual procedural path and then describes the allegations in Plaintiff's Proposed Second Consolidated Amended Complaint (the "Proposed SCAC" or, in citations, "Prop. SCAC").

### I. Procedural History

Plaintiff commenced this suit (the "-3403 Action"), pro se.  His original Complaint asserted violations of Title VII, Sections 1981, 1983, 1985 and 1986 of Title 42 of the United States Code, the First and Fourteenth Amendments to the U.S. Constitution, and the New York Human Rights Law against Defendants Brookhaven National Laboratory, Michael Bebon, William Hempfling, William Robert Casey, George Goode and Michael Holland.  The Court dismissed several of those claims by its September 15, 2009 Memorandum and Order (the "September 15 Order").

On April 30, 2010, Plaintiff filed a second pro se action (the "-1966 Action") against many of the same defendants. This suit, which was docketed as Hooda v. Brookhaven National Laboratory, et al., E.D.N.Y. No. 10-CV-1966, included the same claims as the -3403 Action, plus claims under the ADEA and Executive Order 11246. (See Docket No. 10-CV-1966, Entry 1.) The Court, by its sua sponte May 19, 2010 Memorandum and Order[1] (the "May 19 Order"), dismissed the (1) claims against Brookhaven National Laboratory in their entirety; (2) Title VII claims against the individual defendants; (3) New York Human Rights Law claim; (4) First and Fourteenth Amendment claims against all but one defendant; (5) Executive Order 11246 claim; and (6) Title VII and Section 1981 claims to the extent they purported to assert age discrimination claims. (See May 19 Order at 1-3.) The Court also dismissed Plaintiff's ADEA claim but permitted Plaintiff leave to re-plead it. (Id. at 3.)

On June 21, 2010, the Court consolidated the -1966 Action and the -3403 Action, and directed that all future filings be made on the -3403 docket. Although Magistrate Judge William D. Wall's Scheduling Order in the -3403 Action had set June 21, 2010 as the deadline for amended pleadings (Docket Entry 44), the Court granted Plaintiff until July 21, 2010 to file a Consolidated Amended Complaint. (See Docket Entry 58.)

---

[1] The May 19 Order is docketed under 10-CV-1966.

3

That deadline was later extended until August 9, 2010. (July 19, 2010 Minute Order.)

Plaintiff filed his Consolidated Amended Complaint (the "CAC"), which is the operative complaint in this suit, on July 9, 2010. The CAC names Brookhaven, Hempfling, Casey, Bebon, Parnell, Goode, Lee and Holland as Defendants and asserts claims under Title VII, Sections 1981, 1985, 1986, and the First and Fourteenth Amendments. (See CAC, Docket Entry 62.) On September 7, 2010, all Defendants except Holland moved to dismiss the CAC in part, arguing that Plaintiff's Title VII claims cannot proceed against the individual defendants, and that the Section 1985 and 1986 claims and the pattern and practice discrimination claim must be dismissed.[2] (See Pl. Br. 3.)

Plaintiff retained counsel on June 16, 2011. (See Pl. Br. 3.) Plaintiff's counsel investigated Plaintiff's case, and, on July 14, 2011, sought leave to file a Second Consolidated Amended Complaint. (Docket Entry 82.) The Proposed SCAC withdraws those claims that Defendants moved to dismiss, and adds ADEA age discrimination and retaliation claims. Defendants concede that, with the exception of Plaintiff's new ADEA claims, the Proposed SCAC renders their motion to dismiss moot. (Def.

---

[2] Defendant Holland has since been dismissed from the case. (See Docket Entry 84.)

4

Opp. 4.) The Proposed SCAC names only Brookhaven, William Hempfling and William Robert Casey as Defendants.

II. The Proposed SCAC

Having examined the procedural background, the Court now turns to the allegations in the Proposed SCAC. Although the Proposed SCAC details a litany of allegedly discriminatory employment actions, the discussion below focuses on the allegations relevant to Plaintiff's ADEA claims.

At all relevant times, Plaintiff was an employee of Brookhaven, a Delaware corporation charged with operating Brookhaven National Laboratory ("BNL") in Suffolk County, New York. (See Prop. SCAC ¶ 4.) Defendant Hempfling was Brookhaven's human resources manager, and Defendant Casey was the chair of Brookhaven's hiring committee. (Id. ¶¶ 9, 15.) Plaintiffs allege that both men were among his immediate supervisors. (Id.)

Plaintiff is a United States citizen of American Indian origin. (Id. ¶ 21.) He has a B.Sc. in Biological Sciences, a B.Sc. in Health Physics, an M.Sc. in Radiochemistry, an M.Sc. in Environment and Waste Management, and continuing education credits in environmental safety and health and radiation protection programs. (Id. ¶ 22.) Plaintiff has worked at BNL as an Environmental Radiation Program Manager since May 2000, and he is recognized as an expert in regulatory

5

matters pertaining to radiological and environmental protection, U.S. Department of Energy standards and regulations, environmental compliance, and occupational radiation safety and health protection. (Id. ¶¶ 23, 26.)

In March 2009, Plaintiff applied for a promotion to Manager of the Radiation Control Division ("M-RCD"). (Id. ¶ 54.) He interviewed for the position, but was asked only a handful of questions relevant to the duties of the position. (Id. ¶ 55.) In November 2009, a human resources employee told Plaintiff that he would not be promoted, citing Plaintiff's lack of "small science bench top experience." (Id. ¶¶ 56-57.)

Steve Coleman ("Coleman") was promoted to the M-RCD slot instead of Plaintiff. Coleman was younger than Plaintiff, and he had no prior radiation management experience. Plaintiff, by contrast, had nineteen years of experience in this field. Further, Coleman lacked "small science bench top experience," too. (Id. ¶¶ 58, 65-66.)

Plaintiff complained to Carol Parnell, the chair of the M-RCD selection committee, that Plaintiff's non-promotion was discriminatory. (Id. ¶ 64.) It is not clear whether Plaintiff complained specifically of race discrimination or age discrimination, neither, or both. In any event, Parnell admitted that Plaintiff was more knowledgeable and experienced than Coleman. (Id. ¶¶ 65-66.)

6

At around the same time that Coleman was promoted to the M-RCD slot, Jason Remien, another younger colleague of Plaintiff's, was assigned the job of "characterizing" a hazardous management facility.[3] (Id. ¶ 114.) Later, in February 2010, Remien was made the Interim Manager in the Environmental Protection Division. Plaintiff asserts that Remien was less qualified than Plaintiff for the promotion (id. ¶ 119), but Plaintiff does not allege that he ever applied for this job.

On January 29, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"), asserting discrimination based on race, color, national origin, age and retaliation. The EEOC issued Plaintiff a right to sue letter in April 2010. (Id. ¶¶ 128-129.)

On May 24, 2010, Plaintiff applied for an Assistant Lab Director position. (Id. ¶ 79.) Plaintiff was never contacted about his application despite more than one follow-up inquiry with human resources. (See id. ¶ 80.)

---

[3] The Proposed SCAC does not elaborate on what this task entails, but the Court gleans from the context of Plaintiff's allegations that characterizing the hazardous management facility was a desirable assignment. As will be clear from the remainder of this Order, the exact nature of this task is immaterial.

7

DISCUSSION

The Court first considers Plaintiff's motion to amend and then addresses Defendants' pending motion to dismiss the Consolidated Amended Complaint.

I. Leave to Amend

Defendants only oppose the portion of the Proposed SCAC that seeks to add age discrimination and retaliation claims against Brookhaven under the ADEA. (Def. Opp. 4.) They advance two arguments why Plaintiff should be prevented from adding these claims: first, that Plaintiff has not demonstrated "good cause" for adding amendments past the deadline provided for in the scheduling order; and second, that Plaintiff's proposed amendments are futile. The Court considers each in turn.

A. Good Cause

Defendants argue that Plaintiff cannot show good cause for amending the pleadings well after the deadline set forth in Judge Wall's January 25, 2010 scheduling order (Docket Entry 44) and extended by two subsequent court orders.[4] In light of Plaintiff's retaining counsel, new counsel's diligence in requesting leave to amend, and the low risk of prejudice to

---

[4] After his two cases were consolidated, Plaintiff was given until July 21, 2010 to file a consolidated amended complaint and then an extension of that deadline until August 9, 2010. (See June 21 Order; July 19, 2010 Minute Order.)

8

Defendants, the Court concludes that Plaintiff should be permitted to amend his CAC.

Leave to amend will ordinarily be freely given, see FED. R. CIV. P. 15(a), but when the deadline for amending a pleading has passed, a party seeking to amend that pleading must establish good cause for the proposed amendment. Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009). Whether to allow an amendment often depends on the diligence of the moving party, and the ultimate determination rests in the Court's discretion. Id. This Court recognizes that even pro se litigants are not exempt from complying with procedural rules, but "[i]t is of utmost importance . . . that this Court make 'reasonable allowances so that a pro se plaintiff does not forfeit rights by virtue of her or his lack of legal training.'" Colorado Capital v. Owens, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) (quoting Iwachiw v. N.Y. City Bd. of Elections, 217 F. Supp. 2d 374, 378 (E.D.N.Y. 2002).)

In this case, good cause exists to permit Plaintiff to amend the CAC. Prior to retaining counsel, Plaintiff filed three complaints, with the most recent continuing to allege claims that the Court dismissed in its May 19 Order. Clearly Plaintiff had difficulty understanding the May 19 Order and--wisely, in the Court's view--hired an attorney on June 15, 2011. (See Pl. Reply 3.) Plaintiff's counsel reviewed the case and

9

filed this motion to amend relatively soon thereafter, on July 14, 2011. Under the circumstances, counsel acted diligently to protect his client's interests. Were the Court not to permit the amendment, it would risk seeing Plaintiff forfeit his rights for want of legal training. See Colorado Capital, 227 F.R.D. at 193.

The Court is aided in this decision by the fact that discovery is not complete and that Defendants have not yet deposed Plaintiff. (See Pl. Reply 4.) The Court agrees with Plaintiff that his age discrimination claims will not significantly delay discovery and that Defendants will not be prejudiced by the proposed amendments. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) (noting that, in deciding whether to permit an amended pleading, courts "may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants").

B. The Proposed SCAC is not Futile

Defendants next argue that Plaintiff's proposed amendments are futile because they fail to state either a disparate treatment or retaliation claim under ADEA. The Court disagrees.

10

1. Legal Standard

To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Steel Institute of N.Y. v. City of N.Y., No. 09-CV-6539, 2010 WL 5060682, at *6 (S.D.N.Y. Dec. 2, 2010). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). On a motion to dismiss, a plaintiff gets the benefit of all reasonable inferences, see, e.g., Litwin v. Blackstone Group, L.P., 634 F.3d 706, 711 n.5 (2d Cir. 2011), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

11

suffice." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

### 2. Plaintiff's Allegations Suffice

Plaintiff's Proposed SCAC alleges facts sufficient to state claims for discrimination and retaliation under ADEA.

#### a. Age Discrimination

The thrust of Plaintiff's age discrimination claim is that he lost out on a promotion to a younger, less qualified colleague. "To make out a prima facie case for failure to promote, a plaintiff must show that he was a member of a protected class, that he was qualified for the job for which he applied, that he was denied the job and that the denial occurred under circumstances giving rise to an inference of impermissible discrimination." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 578 (S.D.N.Y. 2008). At the pleading stage, however, "a plaintiff need not assert in the complaint specific facts which establish a prima facie case, but rather the complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011) (internal quotation marks omitted); see also Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006) (noting that the familiar McDonnell Douglas burden-shifting framework is an evidentiary standard, not a pleading requirement). All that is

12

required now are facts that raise a plausible claim that, but for Plaintiff's age, he would have been promoted. <u>Fagan</u>, 770 F. Supp. 2d at 497 (citing <u>Roginsky v. County of Suffolk</u>, 729 F. Supp. 2d 561, 568 (E.D.N.Y. 2010)).

Plaintiff has satisfied his pleading burden with respect to the M-RCD position. Although he does not allege his exact age, Plaintiff alleges that he has nineteen years of experience at BNL. (Prop. SCAC ¶ 25.) From this, the Court reasonably infers that Plaintiff is a member of a protected class--<u>i.e.</u>, age forty or over. 29 U.S.C. § 631. Additionally, Plaintiff alleges that he applied for a promotion but was rejected because he lacked "small science bench top experience." (<u>Id.</u> ¶¶ 54-57.) Steve Coleman, Plaintiff's younger colleague, was promoted instead, even though he, too, lacked small science bench top experience. (<u>Id.</u> ¶ 58.) Further, Coleman had no radiation management experience, a glaring shortcoming in contrast to Plaintiff's 19 years of experience. (<u>Id.</u> ¶¶ 65, 67.) Perhaps most important, the chair of the selection committee admitted that Coleman was less knowledgeable and experienced than Plaintiff. (<u>Id.</u> ¶¶ 64-65.) These allegations suffice to state a plausible claim that, but for Plaintiff's age, he would have been promoted instead of Coleman.

Plaintiff devotes a portion of his Proposed SCAC to Jason Remien's tenure at BNL. To the extent Plaintiff asserts a

discriminatory failure-to-promote claim arising out of Remien's February 2010 promotion to Interim Manager of the Environmental Protection Division (Prop. SCAC ¶ 119), he fails to state a claim because there is no allegation that Plaintiff applied for that position. See Witkowich, 541 F. Supp. 2d at 578 (stating elements of a failure-to-promote claim). To the extent Plaintiff is asserting a claim arising out of Remien's October 2009 assignment to "characterize [BNL's] former hazardous management facility" (Prop. ¶ 114), he fails to state a claim because there is no suggestion that Plaintiff suffered an adverse employment action as a result of Remien's assignment. See Kassner, 496 F.3d at 238 (describing what may qualify as a materially adverse change in employment conditions).

b. Retaliation under the ADEA

Plaintiff's Proposed SCAC also asserts a retaliation claim under the ADEA, which essentially charges that Plaintiff suffered an adverse change in his conditions of employment as a result of his earlier discrimination complaints to his employer. (See Pl. Reply 5.) Although the Proposed SCAC is somewhat unclear, the Court, drawing reasonable inferences in Plaintiff's favor, concludes that Plaintiff has stated an ADEA retaliation claim.

"The ADEA prohibits an employer from discriminating against an individual employee because of the individual's

14

opposing any practice made unlawful under the statute." Kassner, 496 F.3d at 241; see also 29 U.S.C. § 623(d). To state an ADEA retaliation claim, Plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action." Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 273 (E.D.N.Y. 2009).

Plaintiff has adequately alleged all four elements of an ADEA retaliation claim. To start, he satisfactory alleges his participation in a protected activity. Although it is not clear whether Plaintiff's informal discrimination complaints alleged age discrimination such that the complaints would constitute protected activity under the ADEA, see Aiello v. Stamford Hosp., No. 09-CV-1161, 2011 WL 3439459, at *23 (D. Conn. Aug. 8, 2011) (ambiguous complaints do not necessarily constitute protected activity); Cordoba v. Beau Dietl & Assocs., No. 02-CV-4951, 2003 WL 22902266, at *9 (S.D.N.Y. 2003), Plaintiff's January 29, 2010 EEOC charge, which included allegations of age discrimination, clearly qualifies as an ADEA-protected activity. Mabry v. Neighborhood Defender Svc., 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) ("It is well established that the filing of an EEOC complaint is a protected activity."). "Additionally, it is clear that [D]efendants knew that

15

[P]laintiff filed an EEOC complaint. The EEOC is required by statute to promptly notify all persons named in a charge as prospective defendants upon receiving such charge." Id.

Plaintiff has also adequately alleged that his participation in ADEA-protected activity led to an adverse employment action. Plaintiff claims that on May 24, 2010, he again applied for the Assistant Lab Director position but never received a response, despite his follow-up requests to human resources. (Prop. SCAC ¶¶ 79-80.) He also alleges that Remien, who was younger and less qualified than Plaintiff, was given a promotion that Plaintiff apparently feels should have been his. (Id. ¶ 119.) These actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination" and are thus "adverse" for the purposes of Plaintiff's ADEA retaliation claim. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409, 165 L. Ed. 2d 345 (2006) (construing Title VII's anti-retaliation provision). The Court clarifies that although it found Plaintiff's allegations about the Remien insufficient to state a discrimination claim, see supra at 13-14, they suffice under the "more relaxed standard" applicable to retaliation claims. See, e.g., Kelley v. Sun Microsystems, Inc., 520 F. Supp. 2d 388, 404 (D. Conn. 2007).

16

Finally, Plaintiff has indirectly established a causal connection between his EEOC charge and the adverse employment decisions. "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001)). Plaintiff filed his EEOC charge in January 2010 and applied for the Assistant Lab Director position in May 2010. Although there is no bright line rule as to how closely an adverse employment action must follow a plaintiff's participation in protected activity for the latter to be said to be caused by the former, the Second Circuit has held that "five months is not too long to find the causal relationship." Id.

II. Defendants' Motion to Dismiss

Except for Plaintiff's ADEA discrimination and retaliation claims, Defendants concede that the Proposed SCAC cures the problems they identified in their pending motion to dismiss. (Def. Opp. 4.) The motion to dismiss is therefore DENIED AS MOOT.

CONCLUSION

Based on the foregoing, Plaintiff's motion for leave to file a Second Consolidated Amended Complaint is GRANTED.

17

Plaintiff shall file the Proposed SCAC, styled as a "Second Consolidated Amended Complaint" within twenty-one (21) days from the date of this Order. Defendants' motion to dismiss the Consolidated Amended Complaint (Docket Entry 67) is DENIED AS MOOT.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: September 2, 2011
       Central Islip, New York